BOEING *v.* FORDNEY.

1. Interest—Compound Interest — Contracts—Profit Sharing Agreement.

Defendant F. entered into a joint arrangement with one B., since deceased, for the purchase of certain lands upon a profit sharing basis. The deceased was to and did finance the purchase of large holdings of property, and it was provided by a written instrument, executed by both parties, that title was to be taken in the name of the deceased, who agreed to convey to the second party, the defendant, one-third interest in the lands upon the payment of one-third of the cost, which, they agreed, should include the purchase price, taxes, and interest on all sums at the rate of seven per cent. per annum. For a considerable period the parties engaged in a joint venture of the said nature and in so doing the deceased, at various settlements of the joint business affairs, without any objection on the part of the defendant, computed interest at seven per cent. per annum, compounding it annually; *held*, that they were bound by the express provisions of the writing that interest should be computed annually and not compounded, in a suit for an accounting.

2. Same—Estoppel—Mistake.

Defendant's knowledge that his coadventurer borrowed funds to carry on the operations and paid interest on the loans at frequent intervals was not a sufficient ground for holding that the defendant was estopped from claiming the benefit of the contracts.

3. Mistake—Mutuality—Joint Venture—Interest.

*Held*, in a suit for an accounting and for the correction of a contract or contracts between decedent and the defendant, that the evidence did not show a mutual mistake in drafting the contracts, which complainants asked to have reformed by changing a provision for annual interest to compound interest.

4. Accounting—Statement of Account—Joint Venture.

In stating an account between complainants and defendant, who purchased lands upon a joint profit sharing ar-

rangement, where it appeared that a considerable portion of the property had been sold and transferred a number of years prior to the suit, the proper method of computation is to ascertain the actual cost of the property, determining the amount of the investments and interest at the contract rate and applying thereon the total amounts received for land which was sold, computing interest on the balances at the agreed rate, treating the investment as paid with whatever was received from the purchase price and ascertaining the profits, if any, as of that date. Decedent, who had received back the entire amount invested, with interest, should account to the defendant precisely as if he had acted as agent for its collection. Interest is chargeable in favor of defendant only from the date of the demand made by him.

Appeal from Wayne; Hally, J. Submitted June 8, 1914. (Docket No. 31.) Decided January 29, 1915.

Bill by William E. Boeing and Rudolph Ortmann, executors of the estate of Marie M. Owsley, deceased, against Joseph W. Fordney and others to correct an alleged mistake in certain written contracts and for an accounting. From a decree for defendants, complainants appeal. Modified and affirmed.

*Beaumont, Smith & Harris* (*William W. Gurley* and *Howard M. Carter*, of counsel), for complainants.

*Keena, Lightner, Oxtoby & Oxtoby*, for defendant Fordney.

OSTRANDER, J. Defendant Fordney presented against the estate of Marie M. Owsley, deceased, a claim for $22,547.06, based upon two written instruments. The executors of the estate thereupon filed their bill against him and the commissioners on claims, based upon the contention that the claim involved partnership matters or the matter of a joint adventure which can be fully disposed of only in a court of equity, and that the instruments themselves

should be reformed. The answer of defendant Fordney denies the material allegations of the bill—the existence of a partnership, the right to reformation, the necessity for an accounting. In effect, it denies the jurisdiction of the court, but, if jurisdiction is retained, asks for affirmative relief. The decree recites that the parties have consented in open court to settle and determine in this suit all of the matters put in issue, and adjudges that the bill be dismissed, the complainants pay to Fordney a certain sum of money, the amount to be determined by a method of computation stated in the decree; that the undertakings evidenced by the written instruments be specifically performed; that complainants convey to defendant Fordney an undivided one-third of certain lands in California; and that upon the filing by the complainants of a certain bond the commissioners on claims be perpetually enjoined from passing on the said claim and the probate court advised to proceed to administer and close the estate. The bond was approved and filed in conformity with the terms of the decree.

The formal beginning and the recited inducement in one of the instruments above referred to is:

"This agreement made this thirteenth day of September, A. D. 1887, between Wilhelm Boeing, of the city of Detroit, Michigan, party of the first part, and Joseph W. Fordney, of the city of Saginaw, Michigan, party of the second part, witnesseth: Whereas, said second party has been instrumental in exploring, estimating, and purchasing with the moneys of the first party lands in the State of California, and has furnished his experience and part of his time to that end; and whereas, the lands described below have been bought on the strength of said exploration at the price, including expenses as mentioned below, and said first party having furnished the necessary funds for the purchase of said lands, and has taken the title thereto in his own name: said lands are in the State of California, and described as follows, to wit: *

\* \* The total cost of the above-described lands this day is ninety-nine thousand eight hundred and twenty-four dollars thirty-seven cents ($99,824.37).

"Now, therefore, be it known, that said first party, in consideration of the sum of one ($1) dollar to him in hand paid by said second party, the receipt whereof is hereby acknowledged, and other considerations above refererd to, hereby declares, that he holds said lands for himself and said second party upon the agreement and understanding as follows, to wit:

"That said first party will deed and convey to said second party an undivided one-third (1/3) interest in said lands upon payment of one-third (1/3) of the cost thereof. An estimation of such cost will include purchase price, taxes, and assessments paid by said first party, with interest computed on all sums at the rate of seven (7) per cent. per annum; that such conveyance shall be made to said second party, upon the condition and provision that he shall not sell or transfer his interest in this contract or in said lands until he has first offered to sell and assign such lands or interest to said first party, giving him a reasonable time to accept or decline such offer, and all sales and transfer of said lands or contract by said second party shall be subject to the above stated and reserved right in the first party to purchase the same; and it is further understood and agreed that the said first party before selling said lands shall offer to sell and convey the same to said second party, giving said second party a reasonable time to accept or decline such offer. Said lands were purchased for the purpose of selling the same for mutual profit, and it is understood and agreed that all profits or losses made or sustained in the sale or disposition of said lands, or in defects of titles, shall be divided or paid by and between the parties hereto upon the basis of two-third (2/3) interest in said first party, and one-third (1/3) interest in said second party.

"This contract is executed in duplicate, each party holding an original copy, and it is agreed by the parties hereto that no assignment, sale, pledge, or transfer of the contract held by either of the parties mentioned herein, or transfer of the interest of either of the parties in the premises above described, shall be of any validity or force whatever, unless such as-

signment, sale, pledge, or transfer be made on the other contract held by the remaining party, and by his consent in writing indorsed thereon."

The other instrument, designated in the bill Exhibit B, is in form and substance like Exhibit A, except that the parties of the first part thereto are Wilhelm Boeing and James T. Keena, who took the title in their joint names. It is charged in the bill that for many years previous to the execution and delivery of these contracts Wilhelm Boeing and Joseph W. Fordney had been engaged as partners or *quasi* partners in the purchase of timber lands in Michigan and elsewhere, Boeing furnishing the money, Fordney buying the land therewith, usually taking title in Boeing's name; that Boeing paid the expenses of exploring, estimating, and acquiring the lands and the taxes and other expenses after they were acquired.

"That under the terms of said partnership, or *quasi* partnership, said Boeing was entitled upon the sale of the lands so purchased to a return of the purchase price, the taxes, and other expenses paid by him, and as a part of his contract was also entitled to interest thereon at the rate of 7 per centum per annum, compounded annually; that after the payment of said purchase price, taxes, expenses, and compound interest as aforesaid, said Boeing and Fordney shared in the loss or profit, as the case might be, in the proportion of one-third to the said Fordney and two-thirds to the said Boeing; that said Fordney and Boeing in the conduct of said business acted as agents for each other and for both; that there was a community of interest in both profits and losses, and that there was a community of interest in the land purchased as aforesaid.

"That your orators have been unable to find any written articles of partnership between said partners, or *quasi* partners, but that it was the usual custom of said Boeing and Fordney, after a series of purchases of timber lands as aforesaid, to make a written agreement between themselves with reference to the

lands thus previously purchased, all of which agreements were similar, or substantially similar, in character to said Exhibits A and B hereto attached; that such agreements, however, as your orators are informed, believe, and charge, did not set forth and did not pretend to set forth all of the contract relations between said Boeing and Fordney in the purchase of said lands.

"That from time to time during the course of said partnership dealings, both before and after the execution and delivery of said Exhibits A and B, said Boeing and Fordney had numerous settlements between themselves as to such partnership or *quasi* partnership, and in every instance said settlements were made upon the basis of the allowance to said Boeing, as a part of his said profit, of interest at seven per cent. per annum compounded annually.

"That, as your orators are informed, believe, and charge, said Fordney began making purchases of land described in said Exhibits A and B some time in October, 1886, or nearly one year previous to the execution and delivery of said contracts; that said Fordney went to California and purchased such lands as he saw fit, the money being furnished from time to time and sent to him by said Boeing in advance of such purchases; that said Boeing remained in Detroit the entire time that said purchases were being made; that said California purchases were made beginning some time in October, 1886, and extended over a period of from eight to ten months, and the land was purchased from 15 or 20 different owners; that during this period said Boeing sent to said Fordney in California, for the purpose of said partnership or *quasi* partnership purchases, more than $160,000, substantially all of which was used by said Fordney in said partnership or *quasi* partnership business.

"That the lands set forth in said Exhibit B were purchased by said Fordney in the same manner as those described in said Exhibit A, the money being forwarded to said Fordney by said Boeing, but said James T. Keena was permitted to contribute to the purchase of and was given an undivided one-third interest in the lands thus purchased, the consideration paid by said Keena amounting to $20,000, or thereabouts; that, notwithstanding this fact, said Boeing

and Fordney, as between themselves, included their interests in these purchases in and as a part of their general partnership transactions and dealings, and as a part of their partnership assets.

"That said Wilhelm Boeing during his lifetime carried said lands set forth in said Exhibits A and B, paying all expenses and taxes and other charges thereon, subsequently collecting from said Keena his *pro rata* thereof, so far as the lands described in said Exhibit B are concerned."

The bill then charges the death of Boeing in the year 1900, before which time he conveyed to his wife, Marie M. (now Owsley), also since deceased, the lands in the agreements mentioned; that after the death of Boeing his widow, Marie, executed to Fordney two certain declarations of trust with reference to said lands to protect said Fordney, "and without intending, as your orators are informed, believe, and charge, to change or modify the original partnership or *quasi* partnership agreement with reference to said lands;" that the widow, during her lifetime, continued to pay taxes and other charges and expenses concerning the lands.

"That in February, 1894, a portion of the land included in said Exhibit A was sold for $30,000 cash; that on April 20, 1904, another portion of said land described in said Exhibit A, and all of the land described in Exhibit B, was sold upon land contract for $333,333.33, $100,000 of which was paid in cash, and notes for the remainder therefor, the last of which notes were paid shortly before presentation of the claim of said Fordney against the estate of Marie M. Owsley; that there yet remains a large amount of said partnership or *quasi* partnership lands (in the neighborhood of 1,200 acres) described in said Exhibit A, unsold, the legal title thereto remaining in said Marie M. Owsley until her death as aforesaid.

"That the present claim of said Fordney arises out of a dispute between said Fordney and said estate as to the amount of interest chargeable against said partnership land as a part of the cost thereof; that said dispute arises through a mutual mistake made by said

Boeing and Fordney in the drafting of said Exhibits A and B; that it was the intention of both of said partners, or *quasi* partners, to provide in said contracts for payment of interest at 7 per cent. per annum, compounded annually, but that, through the error of said copartners, said agreement having been drafted by said Wilhelm Boeing himself, who was not a lawyer, the provision for interest was made to read, 'Seven per cent. per annum,' and failed to set forth and express the full intent and meaning of the parties with reference to interest as aforesaid; that said Wilhelm Boeing, in his lifetime, and said Marie M. Owsley, during her lifetime, at all times treated said agreements upon the basis that they provided for compound interest, and in the books of account in which the accounts of various partnership lands were kept charged said lands with interest compounded semi-annually; that your orators are informed, believe, and charge that said Fordney at various times, and in various ways, in his negotiations with said Wilhelm Boeing, and afterwards in his negotiations with said Marie M. Owsley, treated said partnership lands and said contract upon the basis that compound interest was properly a part of the cost of said lands; that it was not until recently, after the death of both the said Wilhelm Boeing and said Marie M. Owsley, that he made any different or other claim.

"That, if interest compounded annually is a proper charge against the cost of said lands as a part of the profit of said Wilhelm Boeing, then the entire cost of said lands has not yet been repaid, and there remains in the neighborhood of $40,000 due to said estate of Marie M. Owsley, but that, if simple interest only can be considered as a part of said cost, then the profit of said Wilhelm Boeing as represented by interest will have been fully paid, and there will remain of the partnership assets, in addition to unsold lands, something like $14,000 in cash, and it is upon the latter basis that said Fordney has presented his claim against said estate, and upon the theory that he is now entitled to be paid said sum. * * *

"That your orators also represent that, so far as said Keena is concerned, all of the lands in which he was interested are disposed of, and they are informed, believe, and charge that all matters in which he was

interested, both as between him and said estate and between him and said Fordney, have been amicably settled and adjusted, and for that reason he is not made a party to this suit."

As stated by complainants and appellants, the issues are:

(1) Considering the relation of the parties, is the original cost of the land, including taxes, expenses of carrying same, chargeable with simple or compound interest?

(2) If with simple interest only, should the computation be upon the basis of the Connecticut or the Massachusetts rule?

Mr. Fordney was a witness in his own behalf. Objections were made to portions of his testimony upon the ground that the facts related were equally within the knowledge of Mr. Boeing, or were equally within the knowledge of Mrs. Owsley. In the brief for appellants the point is stated, with a citation of authorities and reference to the statute, but no application of the rule contended for in the objections and in the brief is made. That is to say, counsel for appellants have not pointed out what facts relied upon by defendant would remain not proven if the rule is enforced. On the contrary, the statement of facts which they present is unquestionably based, in part, upon testimony of Fordney about facts equally within the knowledge of either Mr. Boeing or of his assignee, Mrs. Owsley. In the brief for Fordney, it is said upon this subject, among other things:

"It seems to us upon this record to be of comparatively little consequence to Mr. Fordney whether his testimony is excluded or considered, but what we object to is that complainants should use his testimony, and likewise the inadmissible *ex parte* and unverified statements of Wilhelm Boeing, deceased, to support their case, and at the same time claim that Mr. Fordney can have no benefit from his testimony because of the statute."

This statement is followed by references to portions of the record which, it is said, show that complainants are relying upon Fordney's testimony. In the reply brief for complainants it is said:

"It is a matter of indifference to us whether Fordney's testimony is considered by the court or not. On the whole, it is rather more favorable to us than otherwise. Through the zeal of counsel, plainly incompetent testimony has been injected, which a chancery judge was helpless to exclude. Despite our objections and refusal to cross-examine, it is in the case. We feel justified therefore in referring to this testimony until it shall have been finally passed upon. It merely serves in important particulars to confirm our own testimony, which necessarily was made up in large part from ancient records, documents, statements, back accounts, correspondence, etc."

This being the general attitude of counsel (there are one or two specific portions of testimony and its effect about which there is argument), I do not feel called upon to critically examine the testimony of Mr. Fordney, ascertain to what extent it should be rejected, and determine the effect of rejecting any of it. I am the better satisfied to do this because I am impressed that, with or without the objectionable testimony, the decree dismissing complainants' bill must be affirmed.

Mr. Boeing and Mr. Fordney were for many years associated together in the business of buying, holding, and selling lumber and timber, and they purchased and disposed of a large number of tracts of land, bought with money furnished by Boeing, who paid the expenses of the purchases and the accruing taxes. It is the theory of complainants' bill that underlying the relations which existed between them was a parol agreement which, if correctly interpreted, and legally enforceable, bound them, as partners, or as joint adventurers (and bound Mrs. Owsley as Boeing was bound), to certain specific things, among

them the one that in their settlements and divisions of profits and losses the cost of a particular purchase of lands should be augmented by interest computed at the rate of 7 per cent. per annum upon the original cost and upon the expenses and the taxes paid, and compounded annually. Such an agreement is not evidenced by general articles or by any written contract or memorandum involving any particular purchase or adventure. Indeed, it is negatived by every one of the many memorandums or agreements formally made and executed by the parties in interest. But it is claimed that such an agreement is evidenced by the correspondence and the uniform conduct of the parties, who kept accounts and settled and distributed profits and losses of their various adventures according to the original and underlying agreement. It appears that the parties made many contracts similar to those directly involved in this suit, which reserved to Mr. Boeing interest at 7 per cent. per annum upon sums paid out by him to make and to carry purchases of land and timber; that none of them in terms reserves interest to be compounded; and that in every instance, when the lands were sold, compound interest was, in fact, taken by Boeing as a part of the cost of the land or timber. Upon such a basis settlements were uniformly made, and the method of computation was, apparently, never questioned. For an example, contract Exhibit 5, relating to a purchase and holding of Michigan lands, contains the following agreement of Mr. Boeing "to account for and pay to said second party," Fordney—

"One-third (1/3) of the proceeds of such sales, after deducting from said proceeds the original cost as above to said first party of said lands and annual interest at the rate of 7 per cent. on such cost, together with the amount and interest thereon paid by said first party for taxes on said lands."

Mr. Boeing kept two accounts of his land business

with Mr. Fordney, neither of them in the form of a partnership or of a mutual account. One account he kept with the land, showing its cost, with interest compounded annually; the other an account of cash transactions with Fordney, in which he charged Fordney with one-third of the cost of the land only after a sale had been made and a settlement and division was due. In both he deals as with his own land and his own funds. He, Boeing, is owner of the lands and of their proceeds, and, as he disburses money to purchase lands, so he disburses the proceeds when lands are sold. Fordney kept an account with Boeing. Their accounts agree, or were made to agree, upon conference and examination. Fordney was usually indebted to Boeing as the account shows. But there is nothing in the accounts, or in the manner in which they were kept, to indicate a general partnership or any relation other than the one repeatedly evidenced in the written contracts they made, each of which concerned a particular tract or tracts of land, the original cost of which was stated and the division of proceeds provided for substantially as above set out. There is evidence in the contracts themselves which tends to disprove the existence of a general parol partnership or other agreement of the parties under which the California lands were purchased. In the contracts relating to Michigan lands, losses which may occur are not mentioned. In those relating to the California lands—those here involved—there is a provision that losses shall be shared as profits are shared. In the Michigan contracts it was provided that, if Fordney found a purchaser at a price which suited him, and did not suit Boeing, then, on a release by Fordney, Boeing was obligated to account to him for his one-third interest on the basis of the price proposed. In the California contracts it is provided that Boeing will deed an undivided one-third interest in.

the land to Fordney, upon payment of the cost thereof, upon certain conditions. Whether they were partners or were joint adventurers, there is no objection to enforcing an agreement reserving compound interest to Mr. Boeing on account of his cash contributions, if such an agreement existed. The evidence of such agreement, and the only evidence, is the fact that Boeing always took it; that Fordney did not object; that he himself thus made some computations of the cost of land; that he approved, or at least did not question, such a computation made by the executor of Mrs. Owsley's estate, showing the cost of some or all of the California lands which are embraced in the particular contracts involved in this suit; this in the face of the plain provision for interest agreed to by them in the written contracts which they made. I think there is but one reasonable explanation of the matter, which is that Mr. Boeing, who himself prepared many of the contracts, supposed, and that Mr. Fordney supposed, that the reservation of interest— namely, "annual interest at the rate of 7 per cent."— meant interest computed annually and annually added to the sum drawing interest. This, indeed, is the effect of Mr. Fordney's testimony. The California lands were purchased in 1886 and 1887. After that time, and before the death of Mr. Boeing, he and Mr. Fordney made at least 29 adjustments respecting other properties upon the basis of adding to the cost of the land compounded interest. Upon the contracts involved in this suit the right to do this was first questioned by Fordney. Although lands were bought and sold in a few instances which were never made the subject of a written memorandum of agreement, and although in such cases settlements were made as they were made when written agreements were entered into, I am not satisfied that complainants have proven any general, independent agreement of Boeing

and Fordney. On the contrary, I am impressed by the fact that in most cases—always when there was opportunity to do so—a written memorandum of agreement with respect to particular purchases was made which contains, by recital and otherwise, a complete statement of the relations of the parties. It was to the written contracts that they looked for a statement of their mutual rights and obligations, and it is to them that the court must look.

Unless Mr. Fordney is estopped to insist upon performance of the particular contracts according to their plain terms, they must be so performed. The suggestions of counsel upon the subject of estoppel have all of them been examined, and, I think, must be all of them rejected. That Mr. Boeing borrowed large sums of money for these operations and paid interest thereon at short intervals would furnish some reason for his exacting compound interest if he had done so. But Fordney's knowledge that Boeing so paid interest is not of itself sufficient to estop Fordney to claim the benefit of the contracts. I have considered carefully the suggestion that Boeing made the considerable investment in California lands and carried it for years, relying upon his right to eventually treat the cost of them as including compound interest. But the contracts are before us, executed with formality, unambiguous in their terms. It is of their very essence. that they separate the particular transactions from all others. It does not appear that Fordney did anything with respect to them which affected, injuriously or otherwise, the conduct of the other interested party or parties. He did not protest when he learned how Boeing computed the cost of lands. He even gave Boeing his note in 1889 for a balance which was undoubtedly made from computations which included compound interest.

It is said there was a mutual mistake in drafting

the contracts, which should therefore be reformed to accord with the intention of the parties. I find rather that Fordney assented to Boeing's construction of the terms of the contracts until advised of their true legal effect; that he understood, until correctly advised, that by the terms of the contracts Boeing had the right to compound the interest. The decree dismissing the bill must be affirmed.

As to the method of stating the account. The effect of the decree is to charge Fordney with his proportion of the cost of the land, including principal, expenses, and taxes paid, with interest at 7 per cent. per annum until October 20, 1911. He is credited his proportion of moneys received for sale of the lands as of the date when it was paid and interest thereon at 7 per cent. to October 20, 1911. Upon the balance to be struck he is allowed interest at 5 per cent. from October 20, 1911 (it is said in the brief that this date should be November 19, 1911). Complainants declare this method to be absurd, and say that, if compound interest is not chargeable, then the computation must be made upon the basis of the Massachusetts rule, "and not upon the basis of the Connecticut rule, which is the rule stated in the decree." For defendant Fordney it is said that the Massachusetts rule is followed in the decree as far as it is applicable; that there was nothing either of principal or interest due when some of the land was sold in 1894, nor when partial payments were made from time to time upon the final sale, and consequently nothing to apply these payments to. Perhaps some confusion has resulted from the attempt to separate Mr. Fordney's interest and deal with that, instead of dealing with the fund as a whole. It is a somewhat laborious, but not difficult, matter to ascertain what the land had cost Mr. Boeing and his successors at any particular time. Each sum of money invested and interest upon it from

the time it was invested, beginning with the sums stated in the contracts, is what complainants have at all times had the right to take—to repay themselves. The remainder is profit, and Mr. Fordney is entitled to one-third of it. In February, 1894, some of the land was sold for $30,000. To this extent the interest-bearing investment ought to be reduced, and is, in effect, reduced, when complainants are charged this amount in the account, with interest on it at 7 per cent. In April, 1904, more of the lands were sold, and for a price which more than equaled the sum invested and interest. The sum of $100,000 cash was paid April 20, 1904. Further payments were deferred, with interest at 4 per cent., and were made at various times from March, 1905, to November, 1911. But I perceive no reason for continuing the Boeing investment, as against Fordney, after April 20, 1904. Granting that up to that time Boeing had a 7 per cent. investment in the lands, it was an investment for the purpose only of securing to himself and Fordney a profit when the lands were sold. The lands were sold. The investment should be regarded as then and there paid with whatever was accepted for the purchase price, and the profits ascertained and distributed as of that date. In short, the parties should now do what they might have done April 20, 1904—use the money and sufficient of the securities first maturing to repay Mr. Boeing, and divide the remainder of the securities and the land. If, as I assume, complainants have received the entire sum then unpaid, with interest, they should account to Mr. Fordney for it precisely as though they had acted as collecting agents for him. As I find no evidence of their withholding the money so collected against his demand therefor, no interest will be charged to complainants on account of it before October 20, 1911, from which time any balance in Mr. Fordney's

favor will draw interest at 5 per cent. per annum. If either party has paid out money for the benefit of the other on account of the unsold lands since April 20, 1904, the account to be stated must take care of it.

A decree may be prepared in accordance with this opinion, and will be entered in this court. Defendant Fordney will recover the costs of his appeal against the executors, appellants.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.